UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARY RIHM and RECHO ROWELL, | ) | |
|        Plaintiffs, | ) | |
| | ) | |
|    vs. | ) | 1:12-cv-01474-RLY-TAB |
| | ) | |
| THE HANCOCK COUNTY PUBLIC | ) | |
| LIBRARY, AND DIANNE OSBORNE | ) | |
| AND JEAN MEDLEY, | ) | |
| INDIVIDUALLY AND IN THEIR | ) | |
| OFFICIAL CAPACITIES AS | ) | |
| DIRECTOR AND CIRCULATION | ) | |
| MANAGER, RESPECTIVELY, OF THE | ) | |
| HANCOCK COUNTY PUBLIC | ) | |
| LIBRARY, | ) | |
|        Defendants. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs, Mary Rihm and Recho Rowell, filed this civil action against the

Hancock County Public Library ("Library"), and Dianne Osborne and Jean Medley,

individually and in their official capacities, among others, alleging violations of their

constitutional and state rights.  Medley filed a motion for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons set forth below, the

court now **DENIES IN PART** and **GRANTS IN PART** the motion.

## I. Background

Rihm, a Caucasian female, began employment at the Library in August 2008.

(Compl. ¶¶ 10-11).  Rowell, an African American male, has been in an intimate

relationship with Rihm since prior to Rihm's employment at the Library.  (*Id.*).  Rihm

and Rowell have two children together.  (*Id.* at ¶ 11).

1

The Library employed Medley as Circulation Manager and Osborne as Director of the Library.  (*Id.* at ¶ 5).  Medley was Rihm's immediate supervisor.  (*Id.* at ¶ 12).  Medley, an African American female, was married to an African American male.  (*Id.*).  Medley and Rihm had a friendly relationship in both work and social settings prior to December 2008.  (*Id.* at ¶ 13).

In December 2008, Medley became aware of Rihm and Rowell's intimate relationship, which led Medley to criticize Rihm's job performance for the first time.  (*Id.* at ¶¶ 14-15).  For example, in the presence of Library staff, Medley verbally attacked Rihm regarding Rihm's first pregnancy and referred to Rihm as "mentally slow" and "need[ing] help."  (*Id.* at ¶¶ 18-19).  Similarly, Medley unfairly criticized Rihm for work performance issues by: (1) prohibiting Rihm from using the telephone for personal calls despite other employees not being limited; (2) reprimanding Rihm for the "way [she] sound[ed] on the telephone"; and (3) reprimanding Rihm for "discussing [her] personal life" at work even though other employees were not similarly criticized and they had initiated the discussions.  (*Id.* at ¶¶ 21-23).  In addition, Rihm alleges that Medley condoned and abetted additional discriminatory behavior toward Rihm by Senior Librarians Casey Scholl and Amanda Roeger.  (*Id.* at ¶ 20).  Despite Medley's repeated complaints about Rihm's work performance, Rihm never received any documentation of her alleged performance deficiencies until October 2010.  (*Id.* at ¶ 24).  In contrast, Rihm complained of this discriminatory treatment throughout her employment.  (*Id.* at ¶ 25).

Moreover, Rihm alleges that Medley criticized her for her relationship with Rowell, stating she disapproved because "white women should not date African

American men." (*Id.* at ¶ 16).  Additionally, Medley would "roll her eyes and express her disapproval through body language" whenever she saw Rihm speaking with Rowell at the Library.  (*Id.* at ¶ 17).

On October 9, 2010, Rowell visited the Library on personal business.  (*Id.* at ¶ 27). Scholl and Roeger observed Rowell in the Library lobby, but Rowell did not communicate with them in any way.  (*Id.* at ¶¶ 29-30).  The next day, Medley called Rihm into her office to inform Rihm that Rowell had allegedly "intimidated" other, unidentified individuals.  (*Id.* at ¶ 31).  As a result, Medley informed Rihm that Rowell was no longer allowed to enter the Library when Rihm was working.  (*Id.*).  Other employees did not have any family visitor restrictions.  (*Id.* at ¶ 32).

On October 15, 2010, Osborne sent several unnamed police officers to deliver written notice to Rowell, at his home address, that his rights to be on the premises of the Library were terminated, effective immediately.  (*Id.* at ¶ 35).  This ban stemmed from allegedly being "disruptive and intimidating to employees and operations of [the Library]."  (*Id.*).

On October 26, 2010, the Library suspended Rihm without pay for three days for engaging in an allegedly disrespectful conversation with Osborne along with "numerous complaints by other Circulation staff of a hostile work environment caused by [Rowell's] disrespect and treatment of other staff."  (*Id.* at ¶ 39).  On November 11, 2010, the Library terminated Rihm for allegedly "failing to follow orders and unprofessional behavior."  (*Id.* at ¶ 40).

3

Based on the above facts, Plaintiffs brought various constitutional claims under 42 U.S.C. § 1983 ("Section 1983"), along with claims for intentional infliction of emotional distress ("IIED"), against the Library, and Osborne and Medley, in their official and individual capacities.  (Compl. Counts One, Two, Five, and Six).  Medley now moves for judgment on the pleadings as to all claims.

## II. Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial.  FED. R. CIV. P. 12(c).  Motions for judgment on the pleadings are reviewed under the same standard as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL–CIO*, 335 F.3d 643, 647 (7th Cir. 2003).  To that end, the court will accept "all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (citations omitted).  This motion will be granted "only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party

---

[1] Medley argues that the motion attempts to dispose of the case on the basis of the underlying substantive merits, and thus, the appropriate standard is that applicable to summary judgment. *See Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993) (finding summary judgment standard was appropriate for a Rule 12(c) motion which attempts to dispose of a case on the substantive merits).  Here, Medley has essentially filed a Rule 12(b)(6) motion for failure to state a claim but at a later stage of the proceedings.  Accordingly, the court will use the same standard applicable to a Rule 12(b) motion.  *See* 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.), Judgment on the Pleadings—In General ("The mere fact that these procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters").

demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

### III.   Discussion

Plaintiffs allege a variety of constitutional claims against Medley, in her official and individual capacity, including claims for freedom of association, due process, and equal protection, as guaranteed by the First, Fifth, and Fourteenth Amendments. Plaintiffs conceded in their response to this motion that their official capacity claims against Medley should be dismissed.  Moreover, Plaintiffs initially brought a state law claim for IIED against Medley, but the parties have since stipulated to dismissing this claim against all Defendants.  (Docket # 51).  The court now turns to the remaining constitutional claims against Medley.

### A.  Equal Protection

Plaintiffs allege that Medley deprived them of their federally protected rights of equal protection as guaranteed by the Fourteenth Amendment.  (Compl. ¶¶ 42, 47).  The Equal Protection Clause "commands that no state shall deny to any person within its jurisdiction the equal protection of the laws . . . which essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006) (internal citations and quotations omitted).  To state a prima facie claim under this clause, a plaintiff must allege that: (1) she is a member of a protected class; (2) she is otherwise similarly situated to members of the unprotected class; (3) she was treated differently from members of the unprotected class; and (4) the defendant acted with discriminatory intent. *Brown v. Budz,* 398 F.3d 904, 916

(7th Cir. 2005); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000); *see also Pacheco v. Lappin*, 167 F. App'x 562, 564 (7th Cir. 2006).

### 1. Rihm

Rihm, a Caucasian female, brings an equal protection claim against Medley, an African American female, for alleged racial discrimination stemming from her relationship with Rowell, an African American.

### a. Protected Class

Medley contends this claim must be dismissed because Rihm does not belong to a protected class.  The Seventh Circuit has not ruled on whether discriminating against a person for association with a person in a protected class constitutes race discrimination in violation of the Fourteenth Amendment.  *Barlass v. Carpenter*, No. 10-cv-454, 2010 WL 3521589, at *5 (W.D. Wis. Sept. 7, 2010); *see also Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) (stating the Seventh Circuit "has not yet definitely ruled on whether discriminating against a person because they are involved in an interracial relationship constitutes race discrimination in violation of Title VII")[2]; *Jenkins v. Cummins, Inc.*, No. 1:10-cv-313, 2012 WL 1028826, at *6 n. 5 (S.D. Ind. Mar. 26, 2012) (same).  That said, district courts in the Seventh Circuit have allowed claims to proceed based on discrimination due to an association with a member of a protected class.  *See, e.g.*, *Barlass*, 2010 WL 3521589, at *5 (assuming at motion to dismiss stage that plaintiff may

---

[2] Although no Title VII claims are present before the court, the court still looks to Title VII discrimination cases for guidance since the same standard for proving intentional discrimination applies to Title VII and Section 1983 equal protection claims.  *Williams v. Seniff*, 342 F.3d 774, 788 n. 13 (7th Cir. 2003).

bring an equal protection claim based on her association with members of a protected class); *Rampich v. Zema Sys. Corp.*, No. 95-c-5760, 1997 WL 285733, at *4 (N.D. Ill. May 22, 1997) (stating plaintiff established first element of a prima facie case of race discrimination under Title VII where he alleged that "he suffered discrimination due to his relationship or association with members of a protected class").

Similarly, other circuits have held that plaintiffs who are not members of a protected class may still bring a discrimination claim based on associating with people of a protected class.  *See, e.g., Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (holding that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race"); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 995 (6th Cir. 1999) (finding plaintiff stated a claim under Title VII where he alleged employer discriminated against him because he had a biracial child); *Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994) (holding Caucasian plaintiff had standing under Section 1983 where he suffered from illegal retaliation because he assisted an African American person); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) (finding plaintiff stated a cause of action under Title VII where he alleged that he was not hired due to his interracial marriage).  Moreover, the "EEOC has consistently held that an employer who takes adverse action against an employee . . . because of an interracial association violates Title VII."  *Parr*, 791 F.2d at 892 (listing EEOC decisions).

7

Based on this precedent, the court is convinced that such discrimination is actionable under the equal protection clause of the Fourteenth Amendment. *See Jenkins*, 2012 WL 1028826, at *6 n. 5 (stating this court is convinced by other circuits that discrimination based on interracial relationships is actionable). Indeed, as the Eleventh Circuit explained:

> Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition that he has been discriminated against because of *his* race. It makes no difference whether the plaintiff specifically alleges in his complaint that he has been discriminated against because of *his* race.

*Parr*, 791 F.2d at 892. The court agrees with this rationale and therefore finds that Plaintiffs may bring an equal protection claim for discrimination on the basis of an interracial relationship.

### b.  Similarly Situated

Next, the court examines whether Rihm is similarly situated to members of the unprotected class. Here, that class would be library workers who are not involved in interracial relationships. The court finds – and Medley does not object – that Rihm is similarly situated to such a class. *See Swearingen-El v. Cook Cnty. Sheriff's Dep't*, 416 F. Supp. 2d 612, 617 (N.D. Ill. 2006), *aff'd sub nom. Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852 (7th Cir. 2010) (stating plaintiff did not have to specifically identify similarly situated individuals in the complaint to successfully state an equal protection claim).

### c.  Treated Differently

The court now turns to whether Medley treated Rihm differently from other Library workers who were not involved in interracial relationships. Medley does not contest this element, as Rihm alleged several instances of disparate treatment: (1) Medley told Rihm she could not use the telephone for personal calls even though other employees did so; (2) Medley reprimanded Rihm for discussing her personal life although other employees were not similarly reprimanded; and (3) Medley restricted Rowell from visiting the Library while Rihm worked but other employees did not have similar visitor restrictions. (Compl. ¶¶ 21, 23, 31, 32). Thus, this prong is satisfied as well.

### d. Discriminatory Intent

Lastly, to show discriminatory intent, Rihm must show that Medley acted with "discriminatory purpose." *Chavez v. Illinois State Police*, 251 F.3d 612, 645 (7th Cir. 2001). That is, that Medley "selected or reaffirmed a particular course of action at least in part because of its adverse effects upon an identifiable group." *Id.*

Medley argues that Rihm's suspension and termination did not stem from her discriminatory motive; rather, these actions were due to Rihm's own inappropriate and unprofessional conduct. Even if Rihm's own behavior led in part to her dismissal, when drawing all inferences in Rihm's favor, these reasons may have instead been a mere pretext for termination. In fact, Rihm alleges several instances which indicate that Medley's actions may have stemmed at least in part from her distaste for Rihm's interracial relationship. First, Rihm states that she enjoyed a friendly relationship with Medley until Medley became aware of Rihm and Rowell's intimate relationship. (Compl. ¶¶ 13-15). After this revelation, Rihm and Medley's relationship deteriorated as

9

she began to criticize Rihm's performance for the first time.  (*Id*. at ¶ 15).  Moreover,

Medley attacked Rihm personally for her relationship with Rowell and expressed

disapproval of their relationship.  (*Id*. at ¶ 16).  For example, Rihm alleges that Medley

stated that "white women should not date African American men."  (*Id*.).  Based on these

allegations, Rihm has sufficiently pled discriminatory intent.

In sum, Rihm has sufficiently stated an equal protection claim and thus, Medley's

motion should be denied as to this claim.

### 2.  Rowell

Most of the elements of Rowell's equal protection claim are quickly satisfied.

First, Rowell – an African American male – is a member of a protected class, both for his

race and for his interracial relationship, as discussed in great detail above.  Next, Rowell

is similarly situated to all Library patrons who are in an intimate relationship with a

Library employee.  To that end, Rowell was treated differently by Medley in that Rowell

was no longer allowed to enter the Library when Rihm was working.  (*Id*. at ¶ 31).  This

was in contrast to all other Library patrons, who were free to enter the Library even if a

family member or intimate associate was working.  (*Id*. at ¶ 32).  Thus, Rowell has

properly alleged that he was treated differently than members of an unprotected class.

The crux of this claim is whether Medley's actions toward Rowell were motivated

by a racially discriminatory purpose.  Based on Medley's words and actions concerning

interracial relationships, Rowell has sufficiently stated a claim that Medley's actions may

have resulted at least in part because of her alleged belief that Caucasian women should

not date African American men.  Based on Medley's alleged behavior, it is reasonable to

infer that she banned Rowell from the Library during Rihm's work hours due to his relationship with Rihm and merely cited his alleged disruptive behavior as a pretext for such a prohibition.  The court notes that this is a close call, so Plaintiffs will need to fully develop the record to sustain a claim; however, the liberal requirements of notice pleading, generally, and for Equal Protection claims, in particular, allow the claim to survive.  *See Budz*, 398 F.3d at 916 n. 1 (observing that an allegation as simple as 'I was turned down a job because of my race' may be sufficient to plead race discrimination in violation of the Equal Protection clause (citing *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998)).  Consequently, Rowell has sufficiently pled discriminatory intent and stated a prima facie case for an equal protection claim.  Thus, Medley's motion for judgment on the pleadings is denied as to this claim.

### B.  Freedom of Association

Plaintiffs contend that Medley interfered with their freedom of association by disciplining and terminating Rihm due to her relationship with Rowell, and banning Rowell from the Library premises for similar reasons.  (Compl. ¶¶ 42, 47). The right to intimate association is a liberty interest protected by the Fourteenth Amendment. *Christensen v. County of Boone*, 483 F.3d 454, 463 (7th Cir. 2007).  This right extends to on-going, unmarried relationships, such as the Plaintiffs' relationship.  *Id*.

To analyze the sufficiency of this claim, the court uses "the basic framework for claims that arise out of the substantive component of the Fourteenth Amendment's Due Process Clause."  *Id.* at 461.  This entails examining whether a fundamental right is at stake and if the government has "directly" and "substantially" interfered with the

Plaintiffs' exercise of that right. *Id*. at 462. If those conditions are met, then the court must determine "whether the governmental action can find 'reasonable justification in the service of a legitimate governmental objective,' or if instead it more properly is 'characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id*. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)).

As to the first element, both parties agree that Rihm and Rowell's intimate relationship is protected by the due process clause. *See Christensen*, 483 F.3d at 463 (finding that the long-term relationship of an unmarried heterosexual couple is a form of "intimate association" protected by the Constitution). With respect to the remaining elements, Plaintiffs argue that any interference with "the rights implicit in the concepts of ordered liberty" is enough to give rise to a substantive due process violation. *See United States v. Salerno*, 481 U.S. 739, 746 (1987). In other words, Plaintiffs seem to argue that simply interfering with fundamental rights satisfies both the second and third prongs of the due process framework.

Plaintiffs' argument misses the mark. The court will assume, *arguendo*, that Medley has directly and substantially interfered with Plaintiffs' right to intimate association. *See Christensen*, 483 F.3d at 464 (holding plaintiffs' allegations were sufficient to show defendant substantially and directly interfered with right to associate intimately where stated that deputy intended to cause plaintiffs harm with each other). Even so, the case law shows that such interference must be more substantial than Plaintiffs argue. *See id.* (finding official conduct that impairs the fundamental right to associate violates the substantive component of the due process clause only if it shocks

the conscience); *Wiswell v. Abbott*, No. 08-3093, 2008 WL 5100471, at *2 (C.D. Ill. Dec.

1, 2008) (finding that where "plaintiff alleges that an individual abused her executive

authority to deny a person's liberty without due process, the 'shocks the conscience'

standard is the appropriate analysis"); *Null v. Gardner*, No. 09-cv-1065, 2009 WL

2928144, at *3 (C.D. Ill. Sept. 9, 2009) (stating plaintiff's constitutional right to engage

in an intimate relationship could only be interfered with in a constitutional sense if

behavior was conscience shocking).  Accordingly, Plaintiffs' focus on whether Medley's

behavior simply "interfered" with their fundamental rights is not the correct inquiry;

rather, Medley's behavior must shock the conscience to have an actionable substantive

due process claim.  *See Christensen*, 483 F.3d at 454 ("Official conduct that represents an

abuse of office . . . violates the substantive component of the due process clause only if it

'shocks the conscience'").

For behavior to "shock the conscience," it must be so brutal and offensive that it

does not comport with traditional ideas of fair play and decency.  *Breithaupt v. Abram*,

352 U.S. 432, 435 (1957).  In other words, "only the most egregious official conduct can

be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846.  This is

because "the Fourteenth Amendment is not a 'font of tort law to be superimposed upon

whatever systems may already be administered by the States.'" *Id.* at 848 (quoting *Paul

v. Davis*, 424 U.S. 693, 701 (1976)).  That is, the Constitution does not guarantee due

care on the part of state officials because "liability for negligently inflicted harm is

categorically beneath the threshold of constitutional due process." *Id* at 849.  By

contrast, behavior most likely to support a substantive due process claim includes

conduct "intended to injure in some way unjustifiable by any government interest." *Id.*
At bottom, "the touchstone of due process is protection of the individual against arbitrary
action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

The first example of conduct the Court found reached this standard occurred in
*Rochin v. People of California*. 342 U.S. 165, 172 (1952). There, the Court found
deputy sheriffs' behavior to violate the "decencies of civilized conduct" where they
forcibly pumped a suspect's stomach without probable cause or exigent circumstances.
*Id*. at 172-73. On the other hand, other potentially tortious behavior did not reach this
level. *See, e.g.*, *Lewis*, 523 U.S. at 855 (holding police officer's behavior did not shock
the conscience where officer engaged in high-speed automobile chase with reckless
indifference to the life of the suspect and ultimately resulted in the suspect's death);
*Christensen*, 483 F.3d at 465 (holding Deputy's behavior did not shock the conscience
where he intentionally stalked and harassed plaintiffs specifically to interfere with their
intimate relationship); *Wiswell*, 2008 WL 5100471, at *2 (stating Assistant State
Attorney did not shock the conscience where she demanded counselor who routinely
testified in proceedings brought by the attorney to terminate her relationship with her
boyfriend as a condition of being able to testify in court).

Here, Medley's alleged behavior did not shock the conscience. Even when
drawing all reasonable inferences in Plaintiffs' favor, Medley's behavior does not reach
this high standard. According to the allegations, Medley criticized and attacked Rihm for
her interracial relationship with Rowell. This allegedly stemmed directly from Medley's
belief that Caucasian women should not date African American men. This led to a litany

14

of alleged discriminatory behavior by Medley, including (1) verbally attacking Rihm about her first pregnancy; (2) referring to Rihm as "mentally slow" and "needing help"; (3) alerting Rihm that she could not use the telephone for personal calls even though other employees did; (4) reprimanding Rihm for discussing her personal life despite other employees not being similarly criticized; (5) criticizing Rihm's work performance; and (6) prohibiting Rowell from entering the Library when Rihm was working.  In sum, this behavior may have been deplorable, distasteful, and shameful if it resulted solely from an aversion to Rihm's interracial relationship and not actual work performance or Library policies.  It is not, however, so extreme as to shock the conscience.  In fact, some of Medley's conduct seems to be enforcing current Library policies, even if they were instituted in a discriminatory way.

Likewise, Medley's alleged discriminatory treatment of Rowell does not shock the conscience.  Medley allegedly told Rihm that Rowell could no longer enter the Library when Rihm was working.  (Compl. ¶ 31).  Then, Osborne, not Medley, terminated Rowell's rights to be on the premises of the Library.  (Compl. ¶ 35).  Even if other employees were permitted to have family visitors during their shifts, and even assuming Rowell's restriction stemmed solely from discriminatory animus, this would not reach the high bar of shocking the conscience.  Accordingly, Medley's motion for judgment on the pleadings is granted as to Plaintiffs' freedom of association claims.

## C. Due Process

Rowell alleges that Osborne deprived him of his federally protected rights of due process of law.  (Compl. ¶ 47).  The Fourteenth Amendment affords individuals

15

substantive due process.  As discussed above, "the substantive component of the Due

Process Clause is violated by executive action only when it 'can properly be

characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Lewis*, 523

U.S. at 847.  Here, Medley's behavior does not come close to meeting this standard,

particularly when comparing to cases which did not meet such a high bar even though

they resulted in tragic deaths.  *See id*. at 855.  Accordingly, Medley's motion is granted as

to Plaintiffs' due process claim.

## IV. Conclusion

For the reasons set forth above, Medley's motion for judgment on the pleadings

(Docket # 48) is **DENIED IN PART** and **GRANTED IN PART**.  Accordingly,

Plaintiffs' claims for equal protection under the Fourteenth Amendment still remain.


**SO ORDERED** this 3rd day of December 2013.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana



Distributed Electronically to Registered Counsel of Record.